UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
U.S. DISTRICT COURT
W.D.N.Y. BUFFALO

2006 APR 14  AM 10: 32

---

DONTIE S. MITCHELL,

                        Plaintiff,

    -against-

GLENN S. GOORD, Commissioner; JOHN BURGE,
Superintendent; CAPTAIN WENDERLICH;
LIEUTENANT HUGHES; and, CORRECTIONAL OFFICER
HUGHES, in their individual and in their
official capacities,

                        Defendants.

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C. §1983

CASE NO. 06-CV-6197

---

Plaintiff, Dontie S. Mitchell, pro se, states the following:

### PARTIES

1. Plaintiff Dontie S. Mitchell [hereafter "Mitchell"], is presently in the custody of the New York State Department of Correctional Services [hereafter "DOCS"], and is being confined at Elmira Correctional Facility in Elmira, New York. He is, and was at all relevant times herein, an adult citizen of the United States.

2. Defendant Glenn S. Goord [hereafter "Goord"], was at all relevant times herein the Commissioner of DOCS and is responsible for operating and maintaining the several correctional facilities of the State of New York, and he has the power to intercede on behalf of Mitchell in this matter.

3. Defendant John Burge [hereafter "Burge"], was at all relevant times herein the Superintendent of Elmira Correctional Facility and is responsible for operating and maintaining that facility under the direction of Goord.

4. Defendant Captain Wenderlich, was at all relevant times herein a Correctional Captain at Elmira Correctional Facility.

5. Defendant Lieutenant Hughes [hereafter "Lt. Hughes"], was at all

relevant times herein a Correctional Lieutenant at Elmira Correctional Facility, and also is the brother of Correctional Officer Hughes.

6. Defendant Correctional Officer Hughes [hereafter "C.O. Hughes"], was at all relevant times herein a Correctional Officer at Elmira Correctional Facility, and also is the brother of Lt. Hughes.

## JURISDICTION AND VENUE

7. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983.

8. Mitchell's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201, and pursuant to 42 U.S.C. § 1983.

10. The cause of action arose in the Western District of New York; therefore, venue is proper under 28 U.S.C. § 1391(b).

## PREVIOUS LAWSUITS

11. Mitchell has not filed any other lawsuits dealing with the same facts involved in this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Mitchell has used the greivane mechanism of DOCS to address his concern that Prison Rule 105.12-Unauthorized Organizational Activity is used to punish inmates for exercising their legitimate rights guaranteed by the First Amendment, and is often unconstitutionally applied by facility staff.

13. Mitchell has not yet used any other administrative remedies to

resolve his current situation because he is still being subjected to the disciplinary process for which he is filing this complaint to stop, because no current administrative remedies can afford him the rapid relief he needs presently, and because the administrative remedies available to him have already proven ineffective in protecting his rights in a similar situation in the past, for which he intends to amend this complaint to include at a later date as an additional cause of action.

## STATEMENT OF FACTS

14. On March 28, 2006, Correctional Officers Thomas and Shadduck were ordered by Lt. Hughes to search the cell (G-5-12) assigned to Mitchell at Elmira. During this search, several pages of written material was confiscated by Thomas and Shadduck and turned over to Lt. Hughes, who, upon information and belief, ordered Thomas to file a misbehavior report against Mitchell for violating Prison Rule 105.12 - Unauthorized Organizational Activity for possessing the material.

15. On April 3, 2006, Captain Wenderlich, with the authorization, and acting in the stead, of the Superintendent, commenced a Tier III hearing relating to the misbehavior report filed by Thomas against Mitchell. Upon information and belief, Captain Wenderlich specifically requested, or sought, authorization by Burge to conduct the hearing, possibly at the behest of Lt. Hughes.

16. Captain Wenderlich, on his own accord, had called Lt. Hughes as a witness at the hearing, who happened to already be in the office where disciplinary hearings are held. Upon information and belief, Captain Wenderlich and Lt. Hughes had already discussed the misbehavior report with each other and had already planned, in a general way, how they were going to

proceed with Mitchell's hearing.

17. Upon information and belief, Lt. Hughes was to justify the misbehavior report against Mitchell during the hearing with just enough factual allegations so as to meet the relatively easy burden of proof to have him found guilty, seemingly in accordance with due process. This was to be done even if Mitchell had a valid and compelling defense to the charge against him.

18. At the hearing, the question came down to whether an organization called the New Afrikan Collectivists Association [hereafter "NACA"] was an unauthorized organization, therefore, causing Mitchell to be guilty of violating Rule 105.12 for possessing material from that organization.[1]

19. During the hearing, Mitchell gave testimony that in July 2005, NACA material was confiscated from him and a misbehavior report was filed against him for violating Rule 105.12 as a result. Mitchell testified that Mr. Hopkins, the Deputy Superintendent of Administrations [hereafter "Hopkins"] at Elmira, found him **not guilty** of violating Rule 105.12 and gave him back the NACA material.

20. Mitchell requested to call Hopkins as a witness and to present the tape recording of the July hearing as evidence to verify that he was indeed found **not guilty** of violating Rule 105.12 once before for possessing NACA

---

1. Also confiscated from Mitchell were written materials from the Maoist Internationalist Movement [hereafter "MIM"] and from a website called It's Right To Rebel [hereafter "IRTR"]. The MIM material was given back to Mitchell, with the exception of materials attributed to a MIM correspondence study group, although Lt. Hughes testified that he ascertained that MIM was not an approved organization either. The IRTR material was not given back, nor was any indication given whether this material was deemed unauthorized organizational material. Mitchell states here that the IRTR material is not unauthorized organizational material and would be approved by the Media Review Committee, which is responsible for approving and disapproving written materials, namely publications and other similar literature, received by, or already in the possession of, an inmate.

material, some of which was part of the material confiscated from him in this matter.

21. Captain Wenderlich promptly denied Mitchell's request to call Hopkins as a witness and to present the July hearing tape as evidence. He suggested that Hopkins made a mistake by finding Mitchell not guilty, and that what occurred at the July hearing was not relevant to the hearing he was conducting.

22. Upon information and belief, Hopkins would have testified at Mitchell's hearing that he did not find the NACA material to be unauthorized and therefore found Mitchell not guilty for violating Rule 105.12 and had returned the NACA material back to Mitchell as a result. He would have also testified that some of the material confiscated this time was in fact among the material he had already reviewed and deemed appropriate for Mitchell to possess. Hopkins would have presented himself as a credible witness with past experience in dealing with Mitchell and his NACA material.

23. During the hearing, Lt. Hughes claimed that he had spoken to someone in Special Operation at DOCS Central Office in Albany to inquire into whether the NACA was an organization approved by the Deputy Commissioner for Program Services [hereafter "DCPS"]. Lt. Hughes testified that this unidentified person told him that the NACA was not thus approved.

24. Mitchell asked Lt. Hughes to name the person he spoke to in Special Operations so that he could call that person as a witness. Captain Wenderlich promptly refused to allow the question, and he denied Mitchell's request to call the person in Special Operations as a witness. In his written reason for why he denied the person in Special Operations as a witness, Captain Wenderlich stated that it would not be "in the best interest of correctional goals" to call the person, and that the person would have nothing specific to offer.

25. Upon information and belief, the person in Special Operations would

have testified that the NACA did not need to be approved by the DCPS in order for Mitchell to legitimately possess its material so long as the NACA was not an inmate based group operating, or attempting to operate, within the facility without approval. This person would have also testified that the purpose of Rule 105.12 is to check gang activity, and to prevent inmates from forming and participating in group activities within the facility among and between themselves without first getting approval.

26. Although Lt. Hughes acknowledged that the NACA was not an organization he could prove was trying to operate within the facility, he still claimed during the hearing that it was unauthorized.

27. When asked if he had any information that would suggest that Mitchell was trying to form a chapter of the NACA within the facility without authorization, Lt. Hughes could not offer such information.

28. When asked if Mitchell was engaged in any activities that would be a threat to the safety, security, and order of the facility, Lt. Hughes could not give testimony that Mitchell was so engaged.

29. Captain Wenderlich and Lt. Hughes both agreed that the NACA was not a gang. So the question during the hearing centered around whether the NACA was not approved by the DCPS and whether it had to be in order for Mitchell to possess material from it.

30. Mitchell consistently argued during the hearing that the NACA was an outside organization that was not operating, nor attempting to operate, within the facility, thus it did not need to be approved by the DCPS.

31. There was no evidence presented during the hearing that would suggest that the NACA was an inmate based group operating, or attempting to operate, within the facility, nor any evidence that Mitchell was trying to make this happen.

32. Captain Wenderlich questioned Mitchell about a letter written to him in which the author claimed to be a part of an organization whose name he did not mention. The author made comments that Captain Wenderlich characterized as subversive and unacceptable organizational activity.

33. Mitchell did not argue that the comments in the letter described activity that would be unacceptable within a correctional facility setting if the supposed organization mentioned was indeed operating, or attempting to operate, within the facility. There was no indication, however, that the supposed organization being described in the letter was even an actual organization, and the author clearly distinguished the supposed organization he was referring to from the NACA.

34. Mitchell argued during the hearing that Rule 105.12 was being misapplied in his case because the rule could only reasonably be applied to groups operating, or attempting to operate, within the facility. The only departmental policy covering the procedure by which an organization can be approved is Directive 4760. This policy refers only to inmate organizations. There are no departmental policies that even suggest an outside, non-inmate based organization must be approved before an inmate can possess its material.

35. The only other departmental policy that would be applicable here is Directive 4572, which covers the procedure by which written materials sent to an inmate by mail, or already in their possession, are to be individually reviewed to determine if they are acceptable for the inmate to have. Mitchell raised this point with Captain Wenderlich and asked him to send the confiscated NACA material to the Media Review Committee. Captain Wenderlich refused.

36. Captain Wenderlich had disagreed during the hearing that an organization must be operating, or attempting to operate, within the facility before an inmate can be charged with violating Rule 105.12. Upon information

and belief, Captain Wenderlich had already made up his mind before the hearing was completed that Mitchell was guilty and the NACA was an unauthorized organization.

37. Just before the hearing concluded, Mitchell witnessed how Captain Wenderlich was hardly paying him any attention while he was presenting his defense and began writing his disposition.

38. After the hearing, Captain Wenderlich found Mitchell guilty of violating Rule 105.12. He also sanctioned Mitchell with seven months SHU confinement and loss of privileges, and recommended three months loss of good time.

39. Upon information and belief, Captain Wenderlich knew that the NACA was not unauthorized organization within the meaning of Rule 105.12 and departmental policy, but because he disagreed with the political ideology of the NACA, yet admitting he did not thoroughly go over the material to fully ascertain what the political ideology of the NACA was.

40. Upon information and belief, Captain Wenderlich found Mitchell guilty at the urging of Lt. Hughes, whose brother, C.O. Hughes has filed the July misbehavior report against Mitchell for allegedly violating Rule 105.12.

41. Upon information and belief, C.O. Hughes told his brother about Mitchell prevailing on the July misbehavior report and asked him, in essence, to retaliate against Mitchell.

42. Upon information and belief, Lt. Hughes took it personal that Mitchell prevailed on the misbehavior report his brother filed against Mitchell, and he used the opportunity of Mitchell's NACA material being confiscated a second time to pay Mitchell back on behalf of his brother.

43. Upon information and belief, Lt. Hughes knew his claim that the NACA was an unauthorized organization within the meaning of Rule 105.12 and

departmental policy was dubious, and that the person in Special Operations would not fully support his testimony at the hearing.

44. Upon information and belief, Captain Wenderlich knew that the person in Special Operations would not fully support Lt. Hughes' testimony and thus refused to call that person as a witness at Mitchell's request.

45. Upon information and belief, Captain Wenderlich knew that had he called Hopkins as a witness on Mitchell's behalf he would support Mitchell's defense. Captain Wenderlich knew he could not easily ignore Hopkins' testimony, who, technically, is his superior.

46. Upon information and belief, Rule 105.12 is often used by facility staff persons to punish inmates for having literature they disagree with or do not understand.

47. Captain Wenderlich told Mitchell after the hearing that Mitchell reminded him of his son, who was not only a Red Socks fan but a person who disliked the government. Captain Wenderlich called Mitchell a racist and said he did not like the fact that Mitchell espoused to the political ideology of the NACA, although Mitchell never made any such admission. Captain Wenderlich told Mitchell he would be so much better off if he were to get ride of his radical ideas, even if they do not technically violate departmental policy if he were to write or speak about them.

48. Captain Wenderlich told Mitchell that he disliked inmates who become leaders within the facility because the power goes to their heads. He then told Mitchell he would be recommending that Mitchell be transferred to another facility because Mitchell represented such a threat.

49. Mitchell is the Interim President of the Elmira Facility Chapter of the National Trust for the Development of African American Men [hereafter "the Trust - Elmira"]. The Trust - Elmira is an organization Mitchell had worked to

get approved by following Directive 4760. It is an organization that seeks to help African American men, especially the youth, become more responsible for themselves, their families, and their communities, and to work to become more positive and constructive persons. Mitchell does not represent any threat to Elmira. In fact, he represented a positive alternative to the destructiveness that the department cannot seem to quail with all its threats of SHU confinement, loss of privileges, and loss of good time.

50. Upon information and belief, C.O. Hughes and Lt. Hughes took action against Mitchell because they personally disagreed with the political ideology of the NACA. Upon information and belief, like Captain Wenderlich, they took it personal that Mitchell, a mere inmate, would have the audacity to possess such literature, even if it would be deemed acceptable pursuant to the standards in Directive 4572 as reading material.

51. Upon information and belief, Goord knew, or should have known, that facility staff were arbitrarily and unconstitutionally applying Rule 105.12, and he should have took the necessary action to correct this.

52. Upon information and belief, Burge knew, or should have known, that facility staff at Elmira were arbitrarily and unconstitutionally applying Rule 105.12, and he should have took the necessary action to correct this.

53. Upon information and belief, facility staff often violate the constitution and other laws and departmental policies, causing inmates harm without justification. They do so because they know that the State of New York provides them indemnification from personal liability for their actions.

## STATEMENT OF CLAIMS

54. Mitchell realleges and incorporates by reference paragraphs 1 through 53 herein.

55. At all relevant times herein, Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of law to deprive Mitchell of his constitutional rights, as set forth herein.

56. Each Defendant, due to his actions or inactions, violated Mitchell's rights protected under the First, Fifth, and Fourteenth Amendments of the United States Constitution.

57. Goord violated Mitchell's constitutional rights by not making facility staff personal liable for their arbitrary and wanton actions in violating the human, civil, and constitutional rights of inmates in DOCS custody.

58. Goord violated Mitchell's constitutional rights by not clarifying that Rule 105.12 does not apply to outside, non-inmate based organizations.

59. Goord violated Mitchell's constitutional rights by not properly training facility staff in the appropriate application of Rule 105.12.

60. Goord violated Mitchell's constitutional rights by making it far too easy for facility staff persons to take retaliatory actions against inmates by use of the disciplinary mechanism, which has a burden of proof too easy to meet by facility staff persons.

61. Burge violated Mitchell's constitutional rights by knowing, or failing to know, that facility staff at Elmira were arbitrarily and unconstitutionally applying Rule 105.12, and for not taking appropriate action to correct this.

62. Captain Wenderlich violated Mitchell's constitutional rights for denying him the right to call witnesses and present other evidence during the hearing he conducted on April 3, 2006; for being unfair and biased against Mitchell; for punishing Mitchell for exercising his rights guaranteed under the First Amendment; for not affording Mitchell due process as guaranteed under the

Fifth and Fourteenth Amendments; and for failing to return Mitchell's literature.

63. Lt. Hughes violated Mitchell's constitutional rights for having a misbehavior report filed against him in retaliation for Mitchell prevailing on a previous misbehavior report, related to the same offense for the same material as in the instant matter, that his brother filed against Mitchell and thus punishing Mitchell for exercising his rights guaranteed by the First Amendment; and for ordering his legitimate political literature confiscated when he knew, or should have known, said material was not unauthorized organizational material and thus causing Mitchell to be subjected to unconstitutional disciplinary action

64. C.O. Hughes violated Mitchell's constitutional rights by conspiring with his brother to deprive Mitchell of his rights to free political expression and due process.

## PAYER FOR RELIEF

65. Mitchell requests an order declaring that the Defendants have acted in violation of the United States Constitution.

66. Mitchell requests an order declaring that Rule 105.12 is unconstitutional, or, in the alternative, was unconstitutionally applied in Mitchell's case, and that Rule 105.12 could not apply to outside, non-inmate based organizations.

67. Mitchell requests an order declaring that inmates in DOCS custody have a First Amendment right to associate and correspond with an outside, non-inmate based political organization, and to possess their literature or to join such an organization as a member so long as the inmates do not form, or attempt to form, a branch of that organization within the facilities without

authorization.

68. Mitchell requests an injunction compelling the Defendants to refrain from enforcing, or to stop the enforcement of, the disciplinary disposition Captain Wenderlich imposed against him.

69. Mitchell requests an injunction compelling the Defendants to return all of Mitchell's political literature.

70. Mitchell requests an injunction compelling the Defendants from not confiscating Mitchell's NACA material in the future, or other political literature, unless their is a good faith belief such material violates the media review guidelines enunciated in Directive 4572, in which case the material should be sent to the Media Review Committee, not a misbehavior report filed.

71. Mitchell requests an injunction compelling the Defendant Goord to amend Rule 105.12 so that it is clear it pertains only to inmate based groups operating, or attempting to operate, within the facility without authorization.

72. Mitchell requests an injunction requiring the Defendant Goord to make a more restrictive burden of proof necessary to find inmates guilty of rule violations for which they may be subjected to confinement in Special Housing and to loss of good time.

73. Mitchell requests an injunction compelling the Defendants Goord and Burge to cause for allegations by inmates of staff members abusing their authority to be more aggressively investigated.

74. Mitchell requests that Defendants Captain Wenderlich, Lt. Hughes, and C.O. Hughes be personally liable for punitive damages in the amount of $500.00 each.

75. Mitchell requests that all Defendants pay compensatory damages for the violations of his constitutional rights, and for each day he had to remain

confined as a result of the unconstitutional disciplinary action taken against him for exercising his rights under the First Amendment.

76. Mitchell requests that the Defendants be required to pay the cost for this lawsuit and other expenses he incurs resulting from its prosecution.

77. Mitchell requests a trial by jury.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 3, 2006

*Dontie S. Mitchell*
Dontie S. Mitchell, Pro Se
Plaintiff

*Dontie S. Mitchell*