# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

DONTIE S. MITCHELL,

Plaintiff,

-vs-                                                   DECISION AND ORDER

COMMISSIONER GLENN S. GOORD, *et al.*,                 06-CV-6197

Defendants.

---

## APPEARANCES

For plaintiff:                    Dontie S. Mitchell, *pro se*
                                  98-A-0071
                                  Upstate Correctional Facility
                                  P.O. Box 2001
                                  Malone, NY 12953

For defendants:                   Benjamin A. Bruce, A.A.G.
                                  New York State Office of the Attorney General
                                  144 Exchange Boulevard, Suite 200
                                  Rochester, NY 14614

**Siragusa, J.** This matter is before the Court on plaintiff's second application for a preliminary injunction. In the present application, he seeks an order enjoining defendants from "preventing me from securing evidence from other prisoners via correspondence in support of my motion for class certification pursuant to [Federal Rule of Civil Procedure] 23." (Mitchell Aff. (Mar. 26, 2007) ¶ 2.) In his complaint, plaintiff claims that the defendants are violating his First Amendment constitutional rights to free speech and freedom of association in connection with their confiscation of written materials he possessed relating

to an organization called the New Afrikan [sic] Maoist Party and its affiliate, the new Afrikan [sic] Brigade. In connection with that complaint, he has filed a motion for class certification in which he contends that

> the systematic deprivation of the First Amendment rights of the plaintiffs, resulting in how Rule 105.12 is written and applied, will continue unless this matter is addressed in a class action suit like this one. For too long the systemic deprivatinos of the constitutional rights of the plaintiffs have continued despite the individual suits that my have been filed by other members in the past. *Shakur* [*v. Selsky*, 391 F.3d 106 (2d Cir. 2004)] is a case in point. The reality is, what has occurred to Mitchell is not isolated and will continue even if he were to obtain a settlement for himself that does nothing to resolve the overall problem.

(Pl.'s Mem. of Law (Nov. 14, 2006), at 4-5.) *Shakur* was before the Second Circuit on plaintiff's appeal of the Court's dismissal of his lawsuit at the pleadings stage. The underlying claim in that case also involved the confiscation of New Afrikan political literature by officials of the Department of Correctional Services ("DOCS"). In reversing the district court, the Second Circuit commented on the application of Rule 105.12, the same rule implicated in the present lawsuit before this Court. The Court of Appeals wrote:

> Defendants predicated their confiscations on Rule 105.12. That rule distinguishes between authorized and unauthorized organizations. N.Y. Comp. Codes. R. & Regs. tit. 7, § 270.2(B)(6)(iii). "An unauthorized organization is any gang or any organization which has not been approved by the deputy commissioner for program services." *Id*. Rule 105.12 prohibits the possession of "unauthorized organizational insignia or materials." *Id*. Defendants classified Shakur's New Afrikan political literature as unauthorized organizational materials.
>
> On its face, Rule 105.12 appears to ban all literature from outside organizations, unless those organizations have been approved by the deputy commissioner. This regulation would sweep more broadly than the regulations upheld in *Turner*, *Thornbugh*, *Senkowski*, and *Allen*. An across-the-board

exclusion of materials of "unauthorized organizations" may not be rationally related to any governmental objective. Assuming that Rule 105.12 is targeted at the legitimate goal of securing prisons, we are not sure how a complete ban on the materials of "unauthorized organizations" is rationally related to that goal. The district court articulated no such relationship, and none appears to us on the face of the regulation.

Moreover, Supreme Court precedent suggests that Rule 105.12 may be too broad to meet the *Turner* standard. In *Thornburgh*, the Supreme Court upheld the facial validity of a prison regulation permitting the warden to reject publications pursuant to articulated standards. 490 U.S. at 404, 405 n. 5. The Court noted that it was "comforted by the individualized nature of the determinations required by the regulation," and that the regulations "expressly rejected certain shortcuts that would lead to needless exclusions." *Id.* at 416-17 (emphases added). Rule 105.12, by contrast, does not provide any standard against which DOCS officials will conduct an individualized review of the publication in question.

Indeed, the "needless exclusions" apparently made possible by Rule 105.12 exceed even the exclusions that the Supreme Court suggested would be unconstitutional in *Thornburgh*. In *Thornburgh*, the Supreme Court cited with approval a regulation prohibiting the establishment of an excluded list of subscription publications, suggesting that the "shortcut" of listing banned publications would lead to "needless exclusions." *Id.* at 417. The shortcut in *Thornburgh* would, by default, subject the universe of publications to individualized review, and ban only a discrete set of enumerated publications. Rule 105.12 appears to take a much more serious shortcut. It seems to ban all the publications of unlisted organizations and allow only a discrete set of enumerated organizational materials. This "shortcut" greatly circumscribes the universe of reading materials accessible to inmates. It thus appears that Rule 105.12's ban is not sufficiently related to any legitimate and neutral penological objective.

*Shakur*, 391 F.3d at 116. Plaintiff's class certification application suggests at the systemwide application of Rule 105.12 to ban New Afrikan literature. The *Shakur* case is still pending, with the latest order directing the Marshal to serve the summons and complaint on the defendants. *Shakur v. Selsky*, No. 1:02-CV-0837-JJM (Apr. 16, 2007). Shakur had been

represented by a lawyer from Prisoners' Legal Services of New York, but the docket shows that the attorney withdrew after leaving employment with that office and no new attorney has appeared in that case.

Plaintiff in this case was previously disciplined for allegedly violating inmate-to-inmate correspondence procedures and providing unauthorized legal assistance when he used a third party to send an affidavit to another prisoner for that prisoner's review, and signature. Plaintiff maintains that the other prisoner "still has relevant evidence I could use to support my motion for class certification, but I have no way to contact him without violating the rules and regulations of the defendant." (*Id.* ¶ 7.)

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court upheld the facial validity of Missouri prison regulations prohibiting inmate-to-inmate correspondence. In its opinion the Court observed that,

> "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."
>
> *Id.*, at 405. As the *Martinez* Court acknowledged, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.*, at 404-405. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez*, additional reason to accord deference to the appropriate prison authorities. *See id.*, at 405.

*Turner*, 482 U.S. at 84-85 (*quoting Procunier v. Martinez*, 416 U.S. 396 (1974)). In New York prisons, DOCS Directive 4422 prohibits most inmate-to-inmate correspondence. *See* DOCS Directive 4422, Inmate Correspondence Program (*available at*

www.docs.state.ny.us/Directives/4422.pdf (Apr. 27, 2007).) Section 6(c) of that directive requires approval of the superintendent before inmate-to-inmate correspondence will be permitted, and only correspondence with family members, or between codefendants in active criminal cases is allowed. DOCS Directive 4422, Section C(1)(a). The Court determines that DOCS Directive 4422 is facially valid and would not permit the Court to enter an order directing that DOCS permit inmate-to-inmate correspondence in this case.

In another civil case involving the issue of allowing contact between prisoner plaintiffs, the Court had to appoint counsel to provide a single point of contact for all the plaintiffs. Accordingly, if plaintiff in this case is to be able to discover whether he can meet the requirements of Federal Rule of Civil Procedure 23 for class certification, he will need to gather information from other prisoners, as he was attempting to do via what DOCS found to be a "boomerang" letter. Plaintiff also has a request for the appointment of *pro bono* counsel pending (#18-5), which the Court previously indicated would be handled by U.S. Magistrate Judge Marian Payson. However, since appointment of counsel would serve the purpose of not only advancing plaintiff's First Amendment claim, but also assisting with the gathering of evidence to support his class certification, this Court will appoint counsel to represent plaintiff. Further, once counsel is appointed, he or she will be able to review the plaintiff's motion to amend his complaint, which is also pending, and determine whether to advance that application, or to revise it. Thus, the Court will hold in abeyance the remaining motions until counsel has had an opportunity to review them.

## CONCLUSION

Accordingly, plaintiff's motion for a preliminary injunction (# 33) is denied. His motion to amend his complaint (# 18-3) will be handled by U.S. Magistrate Judge Marian W.

Payson. The Court grants plaintiff's motion (# 18-5) for appointment of counsel, and will assign counsel in a separate order. Once counsel has been appointed, this Court will set a separate briefing schedule for plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23 (# 18-4).

      IT IS SO ORDERED.

Dated:  April 30, 2007
        Rochester, New York

                ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge